Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
James Cole, SBN 297826
**OMNI LEGAL GROUP**
10866 Wilshire Blvd., Suite 400
Los Angeles, California 90024
Phone:        310.276.6664
Facsimile:    310.305.1550
omid@omnilegalgroup.com
ariana@omnilegalgroup.com
james@omnilegalgroup.com

Attorneys for Plaintiff
1AND8, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1AND8, INC., a New York Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> WEST 54TH, LLC, a Delaware Limited Liability Company; DEBORAH FIORENTINO, an individual; TIX, INC., a California Corporation; ROBERT EDMINSON, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR:** <br><br> **FEDERAL TRADEMARK INFRINGEMENT; FEDERAL TRADEMARK DILUTION BY BLURRING; CONTRIBUTORY FEDERAL TRADEMARK INFRINGEMENT; VICARIOUS FEDERAL TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION UNDER THE LAHNAM ACT** <br><br> **DEMAND FOR JURY TRIAL** |

PLAINTIFF, 1AND8, Inc., complains and alleges as follows:

### PARTIES

1.       Plaintiff, 1AND8, Inc., ("Plaintiff" or "1AND8"), is now, and at all times relevant herein was, a corporation organized under the laws of the State of New York, having a principal place of business in the City of Los Angeles, California. 1AND8 owns and operates the Museum

1

1  of Ice Cream (collectively, "Plaintiffs").

2      2.      Plaintiff is informed and believes, and on that basis alleges, that Defendant West

3  54TH, LLC ("West 54"), is now, and at all times relevant herein was, an Arizona limited liability

4  company with a principal place of business in Scottsdale, Arizona. Plaintiff is further informed

5  and believes, and on that basis alleges, that West 54 is doing business in the State of Arizona as

6  West 54 Media, West 54 Media Group LLC, West 54 Productions, and West 54 Productions,

7  LLC. Plaintiff is further informed and believes, and on that basis alleges, that West 54 conducts

8  these businesses at or from 7109 E. 2nd Street, Suite 108, Scottsdale, Arizona, 85251.

9      3.      Plaintiff is informed and believes, and on that basis alleges, that Defendant

10  Deborah Fiorentino ("Fiorentino"), is, and at all times relevant hereto, was an individual residing

11  in the State of Arizona.

12      4.      Plaintiff is informed and believes, and on that basis alleges, that Fiorentino is

13  responsible for controlling and directing the activities of West 54. Fiorentino and West 54 are

14  herein collectively referred to as the "West 54 Defendants."

15      5.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Tix,

16  Inc. ("Tix"), is now, and at all times relevant herein was, a California corporation having its

17  principal place of business at 718 W. Anaheim Street, Long Beach, California, 90813.

18      6.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Robert

19  Edminson ("Edminson"), is now, and at all times relevant herein was, an individual residing in

20  the state of California.

21      7.      Plaintiff is informed and believes, and on that basis alleges, that Edminson is

22  responsible for controlling and directing the activities of Tix. Edminson and Tix are herein

23  collectively referred to as the "Tix Defendants."

24      8.      The true names and capacities, whether individual, corporate, associate or

25  otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff at this time,

26  and Plaintiff, therefore, sues said defendants by such fictitious names. Plaintiff will ask leave of

27  Court to amend this Complaint when the same shall have been ascertained. Plaintiff is informed

and believes, and based thereon alleges that each DOE defendant was responsible intentionally,

2

1  or in some other actionable manner, for the events and happenings referred to herein, which

2  proximately caused injury and damage to Plaintiff, as hereinafter alleged. These fictitiously

3  named defendants along with the defendants named above are herein collectively referred to as

4  "Defendants."

5       9.     Plaintiff is informed and believes, and on that basis alleges, that Defendants are

6  responsible for their acts and for their conduct, which are the true legal causes for the damages

7  herein alleged.

8  **JURISDICTION AND VENUE**

9       10.     This Court has original subject matter jurisdiction over this action pursuant to 15

10  U.S.C. §§ 1119 and 1121, 17 U.S.C. § 301, and 28 U.S.C. §§ 1331 and 1338, in that this

11  Complaint raises federal questions under the United States Trademark Act (Lanham Act), 15

12  U.S.C. §1051 et seq. The Court has supplemental jurisdiction over claims arising under state law

13  pursuant to 28 U.S.C. § 1367.

14       11.     The Court has personal jurisdiction over Defendants because they have

15  purposefully engaged in using trademarks that are confusingly similar to Plaintiff's Registered

16  trademark in connection with related goods and services. As Plaintiff's registered trademark

17  provided constructive notice of Plaintiff's intellectual property rights and Plaintiff's location, and

18  as Defendants were aware of Plaintiff's use of the mark in California, Defendants knew or

19  should have known that their activities were directed towards California and that the effect of

20  those activities would be felt in California.

21       12.     The Court also has personal jurisdiction over Defendants because they have

22  purposefully availed themselves of the opportunity to conduct commercial activities in this

23  forum. Defendants have advertised their business activities in California and directed them to

24  California residents. Furthermore, Plaintiff has a good faith belief that a substantial portion of

25  tickets have been sold or are likely to be sold to California residents, particularly California

26  residents in the Central District. This complaint arises out of those commercial activities.

27  Additionally, the Tix Defendants are domiciled in the Central District of California.

     13.     Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c) in that

1  substantial injury occurred and continues to occur in this district, and a substantial portion of the

2  events that are the subject of this action have occurred in this district. Furthermore, the Tix

3  Defendants are domiciled in this district and is thereby subject to personal jurisdiction in this

4  district.

5                                              **AGENCY**

6          14.     At all times herein mentioned, each Defendant was the agent, servant, joint

7  venturer, partner, or employee of the other Defendants, successor corporations, successors in

8  interest, or entities and, in doing the things herein alleged, were acting within the purpose and

9  scope of said agency or employment at the time of the alleged acts. All Defendants were acting

10  within the scope and course of that agency and employment and with the knowledge and implied

11  and/or express consent and permission of the other Defendants.

12                                    **GENERAL ALLEGATIONS**

13          15.     1AND8 Inc. possesses intellectual property rights in and to the Museum of Ice

14  Cream, including but not limited to protectable trademarks in and to the MUSEUM OF ICE

15  CREAM registered mark, see **Exhibit A**, and in and to the Museum of Ice Cream trade dress.

16          16.     The Defendants have diluted and infringed, and intend to continue to dilute and

17  infringe, Plaintiff's trademarks. Defendants also have committed and intend to continue

18  committing unfair competition.

19          17.     This is an action under 15 U.S.C. § 1125 (a) and (c) for trademark infringement,

20  trademark dilution, contributory trademark infringement, vicarious trademark infringement, and

21  unfair competition.

22                                     **FACTUAL BACKGROUND**

23                                  **Museum of Ice Cream and Its Marks**

24          18.     1AND8 Inc. created, owns, and operates the Museum of Ice Cream ("MOIC").

25  Each MOIC is a "pop-up" business in a repurposed building that features ice cream themed

26  rooms through which groups of customers walk. Characterized by world-class ice cream-inspired

27  artistic exhibits and immersive experiences, bright playful colors, upbeat music, energetic and

positive staff, and of course ice cream samples, the MOIC has enjoyed immense popularity and

1  success. Each room captures a different essence of the ice cream experience and conjures up

2  childhood nostalgia. Hundreds of thousands of tickets to the MOIC have been sold in hours, and

3  the MOIC has enjoyed nationwide public recognition since its inception. Because the MOIC is

4  ground-breakingly innovative and extremely lucrative, it is sadly unsurprising that entities such

5  as Defendants intend to and are misappropriating Plaintiff's intellectual property in and to the

6  MOIC.

7      19.    The MOIC has locations in New York, Los Angeles, San Francisco, and will open

8  a Miami location in a matter of months. Plaintiff has been inundated with requests from venues

9  in additional major U.S. markets, and the MOIC is poised to continue its explosive growth in the

10  coming months and years.

11      20.    The MOIC was in large part created by an individual named Maryellis Bunn, who

12  designed most of the rooms and personally supervised the creation of others. Her signature

13  rooms include the "sprinkle pool," the "popsicle room," the "banana split" room, the "gummy

14  garden" room, the "cherry on top" room, the "ever-growing sundae" room, and the "ice cream

15  tasting" room. See Declaration of Maryellis Bunn, attached hereto as **Exhibit B**.

16      21.    The MOIC is aimed at creating an environment that provides a space for social

17  collaboration and provocation of imagination. Maryellis Bunn and her staff designed each

18  exhibit in such a way that guests would feel encouraged to interact with strangers while enjoying

19  the charm of the décor therein. Unsurprisingly, MOIC's trade dress caters to social media.

20  Customers are encouraged to take personal photos (such as selfies) within the MOIC and post

21  them to social media. This creates a powerfully "instagrammable" experience, a term that has

22  generally come to mean an environment that provides a visually stunning and/or high-status

23  backdrop that enables users to take appealing photos, which when posted online, enhance the

24  user's social media presence. Many celebrities, such as Jay-Z, Beyonce, Katy Perry, David

25  Beckham, Kim Kardashian, Gwyneth Paltrow and others have shared their MOIC experiences

26  online. See **Exhibit C**.

27      22.    MOIC has been the subject of many unsolicited stories in national publications

and television programs, such as *Good Morning America*, *The New York Times*, *The Los Angeles*

*Times*, *The San Francisco Chronicle*, *People Magazine*, *TMZ*, *US Weekly*, *USA Today*, *Entertainment Tonight (ET)*, *Forbes*, *Fortune*, *Food and Wine*, *Conde Nast Traveler*, *New York Magazine*, *InStyle*, VH1-News, E! News, *LA Weekly*, *Wired*, *SF Gate*, National Public Radio (NPR), the National Broadcast Channel (NBC), CBS Television, the American Broadcast Channel (ABC), Fox Broadcasting Company (FOX), highlighting the quality and popularity of the MOIC. In each case, MOIC was lauded as a potent cultural force in which the audience was encouraged to experience for themselves. See **Exhibit D**.

23.    Based on the innovative and unique experience that the MOIC provides, and the extensive nationwide attention that the MOIC has received, the MOIC has engaged and served hundreds of millions of people. For instance, MOIC's expansive social media presence reaches more than 43 million, 91 million, and 498 million users across Instagram®, Twitter®, and Facebook®, respectively. Many individuals, cities, and companies have demonstrated eager interest in receiving a MOIC in their area. As a corollary, the MOIC has rapidly generated many millions of dollars in revenue. See Maryellis Bunn's Declaration **Exhibit B**.

24.    Plaintiff was granted registration number 5254459 for the mark "MUSEUM OF ICE CREAM" for "On-line retail store services featuring consumer goods" in International Class 35; has received approval for publication of serial numbers 87633728, 87633743, 87633768, 87449767, 87450195, 87448136, 87448345, and 87446738 for "MUSEUM OF ICE CREAM" and "MOIC" in various classes; and has filed approximately a dozen otherwise pending applications for marks closely related to MOIC (collectively, the "Marks").

25.    As a result of the widespread use in commerce by Plaintiff of its Marks in connection with its goods and services, the Marks have acquired extensive goodwill, both domestically and internationally, and enjoy a high degree of consumer recognition as identifying high quality goods and services which have their origin with the Plaintiff.

### The Present Dispute

26.    On or around approximately August 10, 2017, Plaintiff became aware of the Art of Ice Cream Museum, which at that time was scheduled to open in Scottsdale, Arizona in August 2017. See **Exhibit E**. The Art of Ice Cream Museum was/is a planned "pop up" ice

cream-themed experience through which customers walk. See **Exhibit F**. West 54 created, owned, and intended to operate the Art of Ice Cream Museum.

27.     On or around August 18, 2017, Plaintiff's counsel sent a letter to West 54 informing it of Plaintiff's valuable trademark rights and requesting West 54 cease and desist from such activities.

28.     On or around August 23, 2017, Plaintiff became aware of actual confusion between Plaintiff's Marks and the AICE. See **Exhibit G**. In this email, a representative from a property management company wrote Plaintiff "I heard you're coming to Arizona. Is that true? If so, do you have a location? Need one? Attached is a map of all of our shopping centers with a strong-hold in the Phoenix Market. In a meeting with a ton of colleagues from Los Angeles and I think we'll we have to go on a field trip! Hope we can chat ice cream soon." As Scottsdale is in the Phoenix market, and Museum of Ice Cream had not announced or made public any plans to enter the Phoenix market, but West 54 had publicized the AICE, the consumer confusion is clear.

29.     On or around September 27, 2017, West 54's counsel responded vehemently to Plaintiff counsel's letter maintaining West 54's determination to continue misappropriating Plaintiff's other intellectual property. Despite making self-interested and exculpatory statements, as a behavioral admission of consumer confusion, West 54 stated that it had changed the name of the business from "Art of Ice Cream Museum" to the "Art of Ice Cream Experience" (AICE). For reasons unknown to Plaintiff, the AICE delayed its opening until November, 2017, but still continued to offer advance tickets for sale. See **Exhibit H**. West 54 created, owns, and intends to operate the AICE.

30.     Also in response to the letter from Plaintiff's counsel, and as another behavioral admission of consumer confusion, West 54 claimed to have deactivated the website www.artoficecreammuseum.com. However, West 54 did not actually do so, and the website was still active as of October 20, 2017. See **Exhibit I**.

31.     The AICE describes itself as a "fully immersive, experiential art exhibit celebrating America's love of ice cream. You will find hidden delights in eight individually themed exhibit rooms, each paying tribute to a particular ice cream flavor or frozen treat. In each

7

room you will have the opportunity to engage with the exhibit, enjoy ice cream samples, and above all capture Selfies!" It has been publicized to feature a "push pop room," a "banana split room," a "sundae room," a "popsicle room," a "cone-or-cup room," and other similar rooms. See **Exhibit F**. In light of Plaintiff's famous MOIC rooms of practically the same description, West 54's intent to misappropriate Plaintiff's intellectual property is clear.

32.     Also in response to the letter from Plaintiff's counsel, and as yet another behavioral admission of likely consumer confusion, West 54 added a small disclaimer to the bottom of the www.artoficecreamexperience.com webpage disclaiming affiliation with Plaintiff. This disclaimer is placed far away from all "Art of Ice Cream Experience" marks on the webpage in small-to-normal sized print such that customers are required to scroll all the way down on the webpage to notice the language. See **Exhibit J**. In light of the size, placement, font, and distance from the AICE mark, this disclaimer represents a bad faith attempt to continue infringement rather than truly address consumer confusion. Notably, the disclaimer does <u>not</u> appear on www.artoficecreammuseum.com. See **Exhibits E and I**.

33.     On or around October 2, 2017, in light of West 54's intent to continue its infringing use and misappropriation of Plaintiff's rights in and to the MOIC, Plaintiff's counsel again attempted to reason with West 54. To date, no reply to this letter has been received by Plaintiff or Plaintiff's counsel. Indeed, West 54 continues to use the confusingly similar AICE trademark without authorization. West 54 has stated an intention to continue to use the confusingly similar AICE mark without any limitation whatsoever.

**FIRST CAUSE OF ACTION**

**Federal Trademark Infringement Under 15 U.S.C. § 1125(a)**

**Against West 54 Defendants**

34.     Plaintiff realleges and incorporates by reference each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

35.     Plaintiff owns and has continuously used its federally registered MUSEUM OF ICE CREAM mark in commerce in connection with all of its products and services, including the

MOIC. See **Exhibit A**.

36.     West 54 had constructive knowledge of Plaintiff's ownership of and rights in its federally registered mark prior to West 54's infringing use of the confusingly similar Art of Ice Cream Museum and Art of Ice Cream Experience marks (collectively, "AICE Marks").

37.     Beginning August 2017, West 54 had actual knowledge of Plaintiff's ownership of and rights in its federally registered mark.

38.     Beginning at least August 2017, West 54 has continually used the confusingly similar AICE Marks in commerce.

39.     West 54 has affirmatively expressed intent to continue the infringing use with full knowledge of Plaintiff's superior rights, and with full knowledge that West 54's infringing use of Plaintiff's Marks was intended to or was likely to cause confusion, mistake and/or deception.

40.     West 54's infringing use of the AICE Marks is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection or association of the AICE Marks with Plaintiff's MOIC, in violation of 15 U.S.C. § 1125(a).

41.     West 54's actions constitute knowing, deliberate, and willful infringement of Plaintiff's federally registered Marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a) entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees.

42.     As a result of West 54's infringement, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its federally registered mark. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendant West 54's conduct.

### SECOND CAUSE OF ACTION

### Federal Trademark Infringement Under 15 U.S.C. § 1125(a)

### Against Tix Defendants

43.     Plaintiff realleges and incorporates by reference each and every allegation

1  contained in the paragraphs above with the same force and effect as if said allegations were fully

2  set forth herein.

3       44.     Tix had constructive knowledge of Plaintiff's ownership of and rights in its

4  federally registered mark prior to constructing, printing, and distributing ticket products bearing

5  the confusingly similar AICE Marks.

6       45.     Tix's infringing use of the AICE Mark is likely to cause, and has caused,

7  confusion, mistake or deception as to the affiliation, connection or association of the AICE

8  Marks with Plaintiff's MOIC, in violation of 15 U.S.C. § 1125(a).

9       46.     As a result of Tix's infringement, Plaintiff has suffered substantial damages, as

10 well as the continuing loss of the goodwill and reputation established by Plaintiff in its federally

11 registered mark. This continuing loss of goodwill cannot be properly calculated and thus

12 constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law.

13 Plaintiff will continue to suffer irreparable harm unless this Court enjoins Tix's conduct.

14                          **THIRD CAUSE OF ACTION**

15          **Federal Trademark Dilution By Blurring Under 15 U.S.C. § 1125(c)**

16                          **Against West 54 Defendants**

17       47.     Plaintiff realleges and incorporates by reference each and every allegation

18 contained in the paragraphs above with the same force and effect as if said allegations were fully

19 set forth herein.

20       48.     Plaintiff's MOIC trade dress is distinctive or has acquired secondary meaning and

21 is nonfunctional. Therefore, it is protectable trade dress under 115 U.S.C. § 1125(c).

22       49.     Plaintiff's MOIC trade dress became famous after receiving extraordinary

23 nationwide publicity, primarily by third parties, and by generating a series of extremely

24 profitable locations in several major U.S. markets, thereby garnering widespread recognition and

25 acclaim throughout the country.

26       50.     Defendant West 54's AICE trade dress, as advertised, is nearly identical to

27 Plaintiff's MOIC trade dress. Moreover, as discussed above, West 54 is making use of its AICE

in commerce by selling advance tickets to its AICE. West 54's use began after Plaintiff began

1  after Plaintiff's Marks became famous.

2        51.    Defendant West 54's AICE trade dress is likely to cause dilution of the distinctive

3  quality of Plaintiffs' MOIC trade dress by blurring in violation of 15 U.S.C. § 1125(c).

4        52.    Defendant West 54's actions constitute knowing, deliberate, and willful dilution

5  by blurring of Plaintiff's MOIC trade dress. The knowing and intentional nature of the acts set

6  forth herein renders this an exceptional case under 15 U.S.C. § 1117(a) entitling Plaintiff to

7  recover additional treble damages and reasonable attorneys' fees.

8        53.    As a result of West 54's past, present, and planned wrongful actions, Plaintiff has

9  suffered and will suffer substantial damages, as well as the continuing loss of the goodwill and

10  reputation established by Plaintiff. Moreover, if West 54's actions are not enjoined, Plaintiff

11  stands to lose its hard-won distinctive niche in the marketplace. These past, present, and

12  imminent injuries cannot be properly calculated and thus constitute irreparable harm for which

13  Plaintiff has no adequate remedy at law. Furthermore, injunctive relief is authorized by 15

14  U.S.C. § 1125(c)(1).

15  **FOURTH CAUSE OF ACTION**

16  **Contributory Federal Trademark Infringement**

17  **Against West 54 Defendants**

18        54.    Plaintiff realleges and incorporates by reference each and every allegation

19  contained in the paragraphs above with the same force and effect as if said allegations were fully

20  set forth herein.

21        55.    Beginning before August 2017, and continuing unabatedly, West 54 has supplied

22  and continues to supply materials to Tix that bear the confusingly similar AICE Marks.

23        56.    West 54 continued to, and still continues to, supply these materials to Tix despite

24  full knowledge of Plaintiff's superior rights, and with full knowledge that West 54's infringing

25  use of Plaintiff's marks was intended to or was likely to cause confusion, mistake and/or

26  deception.

27        57.    West 54 has at all relevant times hereto exhibited direct control and monitoring of

the instrumentality used by Defendant Tix to infringe Plaintiff's Marks.

58.     West 54's supply of these materials is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection or association of the AICE Marks with Plaintiff's MOIC Marks, in violation of federal law and the common law of the State of California.

59.     As a result of West 54's infringement, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its federally registered mark. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins West 54's conduct.

## FIFTH CAUSE OF ACTION

### Vicarious Federal Trademark Infringement

### Against All Defendants

60.     Plaintiff realleges and incorporates by reference each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

61.     Defendants have an apparent or actual partnership, such that Defendants have authority to bind one another in transactions with third parties or exercise joint ownership and control over the infringing marks on the ticket products distributed to consumers.

62.     Defendants had constructive knowledge of Plaintiff's ownership of and rights in its federally registered mark prior to the infringing use of the confusingly similar AICE Marks on ticket products provided to consumers.

63.     Defendants' infringing use of a mark confusingly similar to Plaintiff's Marks on the ticket products is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection or association of the AICE Marks with Plaintiff's MOIC Marks, in violation of federal law and the common law of the State of California.

64.     As a result of Defendants' infringement, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in

1  its federally registered mark. This continuing loss of goodwill cannot be properly calculated and

2  thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at

3  law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendants'

4  conduct.

5  **SIXTH CAUSE OF ACTION**

6  **Federal Unfair Competition Under 15 U.S.C. § 1125(a)**

7  **Against All Defendants**

8      65.     Plaintiff re-alleges and incorporates by reference each and every allegation

9  contained in the paragraphs above with the same force and effect as if said allegations were fully

10  set forth herein.

11      66.     Defendants have deliberately and willfully attempted to trade on Plaintiff's hard-

12  earned goodwill in its name and Marks and the reputation established by Plaintiff in connection

13  with its products and services.

14      67.     Defendants' unauthorized and tortious conduct has also deprived and will

15  continue to deprive Plaintiff of the ability to control the consumer perception of its products and

16  services offered under Plaintiff's word and trade dress trademarks, placing the valuable

17  reputation and goodwill of Plaintiff in the hands of Defendants.

18      68.     Defendants' conduct is likely to cause confusion, mistake or deception as to the

19  affiliation, connection or association of Defendants and the AICE with Plaintiff's Museum of Ice

20  Cream, and as to the origin, sponsorship or approval of Defendants and their products and

21  services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

22      69.     Defendants had direct and full knowledge of Plaintiff's prior use of and rights in

23  its marks before the acts complained of herein. The knowing, intentional and willful nature of the

24  acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

25      70.     As a result of Defendants' aforesaid conduct, Plaintiff has suffered commercial

26  damage, as well as the continuing loss of the goodwill and reputation established by Plaintiff in

27  its mark. This continuing loss of goodwill cannot be properly calculated and thus constitutes

irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will

13

continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

1. Entry of an order finding that Defendants have infringed Plaintiff's intellectual property rights and unfairly competed with Plaintiff in violation of 15 U.S.C. § 1125(a) and (c), and the laws of the State of California.

2. Entry of an order (on a preliminary and permanent basis) requiring that all Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from:

A. Using the MUSEUM OF ICE CREAM mark, or any confusingly similar mark or any colorable imitation of the mark, including but not limited to ART OF ICE CREAM MUSEUM or ART OF ICE CREAM EXPERIENCE, in connection with the marketing, promotion, advertising, sale, or distribution of goods or services relating to a "pop-up" business that features ice-cream themed rooms through which groups of individuals walk;

B. Committing any acts which will tarnish, blur, or dilute, or are likely to tarnish, blur, or dilute the distinctive quality of Plaintiff's trademarks and trade dress in and to the Museum of Ice Cream, including without limitation allowing any portion of the public to enter the Art of Ice Cream Experience, opening the Art of Ice Cream Experience for business, or operating the Art of Ice Cream Experience, or a substantially similar business under any other name;

C. Doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or prospective customers of Plaintiff products or services as to the source of any Defendant's products or services offered for sale, distributed, or sold; and

D. Doing any act or thing calculated or likely to deceive members of the public, or prospective customers, into believing that there is some connection, endorsement, or affiliation between Defendants and Plaintiff.

3. Entry of an order pursuant to 15 U.S.C. § 1118 and 15 U.S.C. § 1125(c) requiring

14

1    Defendants to deliver up for destruction all Internet webpages / scripts / html code, articles,

2    packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits,

3    packaging, letterhead, business cards, promotional items, clothing, literature, sales aids,

4    receptacles, templates or other matter in the possession, custody, or control of Defendants or its

5    agents bearing the MUSEUM OF ICE CREAM word mark or any mark that is confusingly

6    similar to or a colorable imitation of the mark, including without limitation ART OF ICE

7    CREAM MUSEUM and ART OF ICE CREAM EXPERIENCE.

8         4.    Entry of an order requiring Defendants and their agents, servants, and employees

9    and all persons acting in concert with or for them, pursuant to 15 U.S.C. § 1116, to file with this

10   Court and serve upon Plaintiff, within thirty (30) days after entry of the injunction, a written

11   report under oath describing in detail the manner and form in which Defendants have complied

12   with the injunction, including ceasing all offering of goods and services under the ART OF ICE

13   CREAM MUSEUM and ART OF ICE CREAM EXPERIENCE marks as set forth above.

14        5.    Entry of an order requiring Defendants to pay a judgment in the amount of

15   Plaintiff's actual damages under 15 U.S.C. § 1117, as well as Defendants' profits, and pre- and

16   post-judgment interest pursuant to 15 U.S.C. § 1117, in an amount to be proven at trial.

17        6.    An award of the attorneys' fees and costs of this action, in an amount to be

18   determined at trial, pursuant to 15 U.S.C. § 1117 and other applicable federal and state law.

19        7.    Entry of an order requiring Defendants to pay a judgment for enhanced damages

20   under 15 U.S.C. § 1117.

21        8.    Entry of an order granting Plaintiff such other and further relief as the Court

22   deems just and proper.

### JURY DEMAND

24   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a jury

25   trial of all issues triable before a jury.

26   ///

27   ///

1

RESPECTFULLY SUBMITTED this 9th day of November, 2017.

2

3                                    **OMNI LEGAL GROUP**

4

5                                    _____

6                                    Omid E. Khalifeh
                                     Ariana Santoro
7                                    James Cole
                                     Attorneys for Plaintiff,
8                                    1AND8, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Plaintiff 1AND8 Inc. COMPLAINT v. Defendants West 54TH LLC, Deborah Fiorentino, Tix, Inc., Robert Edminson, and Does 1-10 Inclusive