O

# United States District Court
# Central District of California

| | |
|---|---|
| IAND8, INC., <br><br> Plaintiff, <br><br> v. <br><br> WEST 54TH LLC, et al. <br><br> Defendants. | Case № 2:17-cv-08206-ODW (PLA) <br><br> **ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [24]** |

## I. INTRODUCTION

Plaintiff IAND8, Inc. owns and operates the Museum of Ice Cream ("MOIC"), a "pop-up" museum featuring ice cream-themed exhibits that sprinkles in bright playful colors, upbeat music, and "Instagramable" moments. (Compl. ¶¶ 18, 21, ECF No. 1.) Defendants are West 54th, LLC, which owns and operates Art of Ice Cream Experience ("AOICE"), another ice cream-themed exhibit based in Scottsdale, Arizona, and Deborah Fiorentino, an Arizona citizen and one of the owners of West 54. (Compl. ¶¶ 3, 4, 26.)

Pending before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively to Transfer Venue (Mot., ECF No. 22.)[1] For

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

the reasons below, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

## II.   FACTUAL BACKGROUND

MOIC is an ice cream-themed art exhibit with locations in New York, Los Angeles, and San Francisco. (Compl. ¶¶ 18–19.) It soon will open an exhibit in Miami. (Compl. ¶ 19.) Patrons to MOIC can take a dip in its "sprinkle pool," frolic in the "gummy garden" room, and end their week in the "ever-growing sundae" room. (Compl. ¶ 20.) National media outlets have extensively covered MOIC. (Compl. ¶ 22.) MOIC encourages its visitors to take selfies and capture "Instagramable" moments with the exhibits, and notable celebrities have shared sweet moments on social media of them playing with cold treats. (Compl. ¶ 21, Exhibit C (images of Chris Martin, Gwyneth Paltrow, Jay-Z, Beyoncé, Blue Ivy, Katy Perry, and David Beckham at MOIC).) On social media, MOIC has reached more than 43 million, 91 million, and 498 million users on Instagram, Twitter, and Facebook, respectively. (Compl. ¶ 23.) This wide reach has generated millions of dollars in revenue for MOIC, and will allow it to reach new markets in the coming years. (Compl. ¶¶ 19, 23). Because of this notoriety, Plaintiff has scooped up numerous trademarks, and has approximately a dozen more pending, for marks related to MOIC. (Compl. ¶ 24.)

In August 2017, Plaintiff learned that West 54 was planning to open the "Art of Ice Cream Museum" in Scottsdale, Arizona later that month. (Compl. ¶ 26.) Thus, IAND8's counsel sent Fiorentino, the owner of West 54, a cease and desist letter.[2] (Compl. ¶ 27); (Mot., Exhibit B). IAND8's basic position was that West 54 would be liable for trademark infringement if it proceeded with opening the Art of Ice Cream Museum. (Mot., Exhibit B.) This cease and desist letter, however, did not chill West

---

[2] Fiorentino and her husband are the trustees of the Hagen Trust, the sole member of West 54. (Mot., Exhibit A, Fiorentino Decl. ¶ 4.)

54's plans. The next month, West 54's counsel responded to IAND8's cease and desist letter, explaining that Plaintiff's claims were without merit. (Mot., Exhibit C.)

Around mid-2017, West 54 began developing the concept for an ice cream-themed exhibit in Scottsdale, Arizona. (Mot., Exhibit A, Fiorentino Decl. ¶ 5.) After West 54 received Plaintiff's demand letter, it changed the exhibit's name from "Art of Ice Cream Museum" to "Art of Ice Cream Experience," thus hoping to avoid confusion with MOIC. (Mot., Exhibit A, Fiorentino Decl. ¶ 6.) Indeed, AOICE's website specifically indicates that it is "NOT AFFILIATED WITH MUSEUM OF ICE CREAM." (Mot., Exhibit A, Fiorentino Decl. ¶ 7.)[3]

To allow online ticket sales, Fiorentino purchased a software application from Tix, Inc. (Mot., Exhibit A, Fiorentino Decl. ¶ 28.) Tix is a California based company. (Compl. ¶ 5.) Tix did not distribute tickets for AOICE; Tix's software application automatically churns out a printable ticket for customers. (Mot., Exhibit A, Fiorentino Decl. ¶¶ 30–31.) Patrons to AOICE also have the option of downloading their tickets to their smart phones. (Mot., Exhibit A, Fiorentino Decl. ¶ 31.) No tickets are mailed to any customers. (Mot., Exhibit A, Fiorentino Decl. ¶ 31.) Fiorentino was not aware that Tix is a California corporation when she purchased the software application. (Mot., Exhibit A, Fiorentino Decl. ¶ 29.) And Fiorentino specifically marketed AOICE to the Phoenix metropolitan area. (Mot., Exhibit A, Fiorentino Decl. ¶¶ 19–20.)

### III. LEGAL STANDARD

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a party may seek dismissal of an action for lack of personal jurisdiction. Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v.*

---

[3] AOICE's website is http://artoficecreamexperience.com.

3

*Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Accordingly, the Court only "inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," uncontroverted allegations in the complaint must be taken as true. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Factual disputes are resolved in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1554 (9th Cir. 2006).

A federal district court may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945)). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law in which the district court sit applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). California law governs and its long-arm statute allows this Court to exercise jurisdiction to the extent allowed by the Due Process Clause of the Constitution. *Id.* (citing Cal. Code Civ. P. 410.10). A district court may exercise either general or specific personal jurisdiction over nonresident defendants. *Fed. Deposit Ins. Corp. v. British–Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

A person is subject to general jurisdiction when his or her "contacts with a state are substantial or continuous and systematic" so as to "approximate physical presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Such a person is subject to the jurisdiction of the courts of that state, "even if the action is unrelated to those contacts." *Id.*

A person who is not subject to general jurisdiction may still be subject to jurisdiction in actions that arise out of that person's specific, forum-related activities.

1  *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The Ninth Circuit has
2  established a three-part test for determining specific jurisdiction:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test. *Schwarzenegger*, 374 F.3d at 802. If that party can satisfy the first two prongs of the test, the burden then shifts to the party contesting jurisdiction to "present a compelling case" that the third prong, reasonableness, has not been satisfied. *Id.*

## IV. DISCUSSION

Plaintiff does not argue that the Court has general jurisdiction over Defendants. Therefore, the Court will only consider whether specific jurisdiction exists.

### A. Whether Defendants Purposefully Directed Their Activities Toward California

The first prong of the specific jurisdiction analysis "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (internal quotation marks and citation omitted). Both parties agree that the "purposeful direction" test applies in tort cases, as is the case here. (Motion at 10); Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction (Opp'n, ECF No. 25, at 6); *see also Dole Foods*, 303 F.3d at

1111.  Under the purposeful direction test, the plaintiff must show the defendant (1) committed an intentional act; (2) expressly aimed at the forum state; that (3) caused harm that the defendant knows is likely to be suffered in the forum state. *Dole Foods*, 303 F.3d at 1111.

IAND8 argues that Defendants purposefully directed their action towards California. (Opp'n at 6–8.)  Plaintiff's main argument is that it informed Fiorentino and West 54 that they were violating its trademark for MOIC, and that the Defendants were aware that Plaintiff would experience harm in California because of the brand's fame.  (Opp'n at 7–8.)  Moreover, Plaintiff suggests that Defendants were on constructive notice that they were violating IAND8's trademark.  (Opp'n at 7.)  Defendants counter that "[a]llegedly tortious conduct with knowledge of a plaintiff's location is not, itself, sufficient to justify the exercise of personal jurisdiction over a nonresident defendant."  Reply to the Motion to Dismiss for Lack of Personal Jurisdiction (Reply, ECF No. 26, at 5.)  Defendants also note that even if they had constructive knowledge of IAND8's trademark, the United States Patent and Trademark Office lists Plaintiff as a New York corporation; there is nothing in IAND8's trademark indicating that Defendants could be haled into a California court. (Reply at 7.)

In support of their position, IAND8 heavily relies on *Panavision Int'l, L.P. v. Toppen*, 141 F.3d 1316 (9th Cir. 1998).  In that case, the defendant was a "cyber-squatter" who bought internet domain names with the hope of selling the names to the company that owned the trademark.  *See Panavision*, 141 F.3d at 1319.  The Ninth Circuit held that California courts had personal jurisdiction over the defendant for Panavision's trademark dilution claim, even though the defendant registered his trademark in Illinois.  *Id.* at 1318.  The Ninth Circuit recognized that simply buying a domain name is not sufficient to create personal jurisdiction over a party living in another state.  *Id.* at 1322.  But defendant's conduct went further.  The defendant knew that Panavision was a California based company, and he bought the domain

name specifically to extort the company. *Id.* at 1321. Personal jurisdiction existed because he took specific actions to affect a California company. *Id.*

Here, Plaintiff does not allege that Defendants sought to shake it down. Defendants took specific steps to avoid patrons confusing AOICE with MOIC. Namely, West 54 changed the exhibit's name from "Art of Ice Cream Museum" to "Art of Ice Cream Experience," it prominently placed a disclaimer that it is not affiliated with MOIC on its website, and it disabled its domain for "Art of Ice Cream Museum." (*See* Mot., Exhibit C ("With that in mind, West 54 has terminated its use of the event name 'Art of Ice Cream Museum,' including termination of the domain name and website content.").) Unlike *Panavision*, IAND8 has not introduced any evidence showing that West 54 created AOICE to confuse California residents or affect MOIC.

Recent Supreme Court and Ninth Circuit decisions are more applicable here than *Panavision*. The plaintiff in *Walden v. Fiore*, 134 S. Ct. 1115 (2014) sued a DEA agent in the District of Nevada, alleging the agent violated his constitutional rights by seizing his money in Georgia. *Walden*, 134 S. Ct. at 1120. The Ninth Circuit held that personal jurisdiction was proper in the District of Nevada because the DEA officer submitted a false declaration with knowledge that it would affect someone with significant connections in Nevada. *Id.* The Supreme Court reversed. It reasoned that all the DEA agent's activities occurred in an Atlanta airport, and that the Ninth Circuit improperly allowed the "plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis." *Id.* at 1125. Rather, courts must look at the defendant's own conduct with the forum to determine whether personal jurisdiction is proper. *See id.* at 1126. Although the plaintiff's Nevada attorney contacted the DEA agent, that "sort of 'unilateral activity' of a third party that 'cannot satisfy the requirement of contact with the forum State.'" *Id.* at 1125 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017), a UK company sent a newsletter promoting products to 343 email addresses that contained a California company's copyrighted logo. *Axiom*, 874 F.3d at 1066–67. At least 55 of those email addresses belonged to companies located in California, with 14 located in Los Angeles. *Id.* at 1070. The Ninth Circuit held this was insufficient contact to support a finding of personal jurisdiction. It reasoned that after *Walden*, the personal jurisdiction analysis must "focus on the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (quoting *Walden*, 134 S. Ct. at 1122). Merely sending single newsletters to unknown recipients who happen to be in California is insufficient to establish personal jurisdiction. *Id.* at 1070.

The Court does not have personal jurisdiction over Defendants because any contact they had with California either was driven by Plaintiff or was a matter of happenstance. Like the Nevada lawyer in *Walden* who reached out to the DEA agent, Plaintiff's counsel reached out to Defendants. IAND8's actions cannot confer the Court with personal jurisdiction over West 54 and Fiorentino. *Walden*, 134 S. Ct. at 1125. Defendants confined their advertising to Arizona and did not seek any marketing opportunities in California. (Mot., Ex. A, Fiorentino Decl. ¶ 19.) Plaintiff's theory—that the Court has personal jurisdiction because they sent a cease and desist letter to Defendants—would have breathtaking implications if applied. Under Plaintiff's theory, a New York or Miami court would also have jurisdiction over this case if Plaintiff simply sent a cease and desist letter saying that they were being affected in those jurisdictions. It would be unfair for any defendant to freeze in the winter months in a Manhattan courtroom or melt in the summer heat at a courthouse near South Beach just because they received a cease and desist letter threatening litigation in that forum.

Finally, even if the Court concludes that Defendants had constructive knowledge of Plaintiff's trademark for MOIC from the United States Patent and Trademark

Office, jurisdiction would not be proper in this Court. Plaintiff is a New York corporation with a New York mailing address. (*See* Compl. ¶ 1.) Assuming the Defendants saw the United States Trademark registration for MOIC, they would conclude that a court located in New York—not in California—would have personal jurisdiction over them. The Court concludes that Defendants did not direct their activities toward California.

B.  **Whether Plaintiff's Claims Arise or Relate to Defendants' Contact with California**

IAND8 argues that their claim arose from Defendants' contact with California. First, Plaintiff notes that but for Tix, a California corporation, facilitating Defendants' unlawful infringement of Plaintiff's trademarks and trade dress, it would not have suffered harm to its goodwill and brand. (Opp'n at 9.) Second, Plaintiff posits that "Plaintiff's business relationship with Plaintiff's artists contractors were injured in California" because Defendants solicited the artists that IAND8 used to create MOIC, thus "putting these artists in a conflict of loyalty." (Opp'n at 10.) First, Defendants note that Tix's location is immaterial to the personal jurisdiction analysis because they only used the application's automated process; neither West 54 nor Fiorentino executed a contract with Tix in California. (Reply at 11–12.) Next, Defendants respond that the artist contractor Plaintiff refers to is from Georgia—not California. (Reply at 9.) According to Defendants, merely displaying work from an artist does not create personal jurisdiction in a forum in which her work is displayed, even if the artist or exhibit is prominent. (Reply at 10.)

Neither of IAND8's arguments shows that its claim arose from West 54's contact with the California. Any contact Defendants had with Tix is insufficient to establish personal jurisdiction. Fiorentino purchased the Tix software in Arizona and did not take any direction to avail herself to California. (Mot., Exhibit A, Fiorentino Decl. ¶ 28.) Tix did not assist Defendants in reaching any California consumer. And Defendants did not reach into California by delivering tickets to patrons because

tickets sold through Tix were either printed online or scanned from the purchaser's smart phone. (Mot., Exhibit A, Fiorentino Decl. ¶ 31.) Plaintiff's only contention that Defendant reached into California is speculation that Defendants must have seen on Tix's website that its Long Beach, California address is listed.  Opp'n at 10 (citing Exhibit H).  Even if Defendants saw on Tix's website that the company is based in California, this would not show that Defendants directed themselves to the state.  In other words, there is no evidence that Defendants used Tix to gain a foothold with a California consumer base.

The Court also does not see how the fact that Defendant hired an artist who worked on MOIC gives it personal jurisdiction over West 54 and Fiorentino.  The artist in question is from Georgia.  (Reply, Exhibit H, Fiorentino Decl. ¶ 5.)  Plaintiff does not cite, and the Court is unaware of, any authority that grants it personal jurisdiction over a defendant because the Defendants associated with a third party who previously directed himself to a forum state.

Plaintiff has not shown that its claim arises from Defendants' contact with California.

**C.     Whether the Exercise of Personal Jurisdiction Would Be Reasonable**

Because IAND8 has not shown that Defendants directed their activities towards California and that Plaintiff's claims arose from Defendants' actions, this Court does not have personal jurisdiction over West 54 or Fiorentino.   But even if Plaintiff made this showing, the Court would lack personal jurisdiction if Defendants make a "compelling case" that exercising jurisdiction is unreasonable. *Burger King,* 471 U.S. at 477.  The reasonableness determination turns on seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence

of an alternative forum." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 745 (9th Cir. 2013) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

Applying this test, it would be unreasonable to exercise personal jurisdiction over Defendants. The first factor, as explained above, heavily favors Defendants because they did not direct any of their activities towards California. The second factor slightly favors the Defendants. Although Scottsdale is not far from Los Angeles and Defendants have retained local counsel, Defendants and their counsel of record are in Arizona. It would be a hassle for Defendants and their lawyers to travel to California on a regular basis for court appearances. The third and fourth factors are neutral. California certainly has an interest in providing relief for its citizens. However, Arizona also has an interest in this case because AOICE is an Arizona attraction designed and marketed exclusively for residents of the state. The fifth factor is neutral. The evidence—the physical exhibits making up MOIC and AOICE—is located in Arizona and California. The sixth factor is neutral. Plaintiff brings only federal claims. An Arizona court is just as capable of interpreting federal copyright law as this Court. Finally, the seventh factor favors Defendants. Arizona is a proper forum for this suit because Defendants are Arizona residents. Thus, an Arizona court would have general jurisdiction over them.

Three of the factors—including "the extent of the defendant's purposeful interjection into the forum state"—favor Defendants. The other four factors are neutral. However, it would not be reasonable for this Court to exercise personal jurisdiction because the first factor heavily weighs in favor of Defendants, and because IAND8 has not shown *any* of the reasonableness factors favor it. Accordingly, it would be unreasonable to exercise personal jurisdiction over Defendants.[4]

---

[4] Because the Court concludes that it lacks personal jurisdiction over Defendants, it will not consider their alternative request to transfer venue to the District of Arizona.

## V.   CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss for lack of personal jurisdiction and **GRANTS** Plaintiff leave to amend.  If Plaintiff wishes to amend the complaint, it must do so within 21 days of this Order.

**IT IS SO ORDERED.**

January 26, 2018

                              _____
                                           **OTIS D. WRIGHT, II**
                                     **UNITED STATES DISTRICT JUDGE**